UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. ALBRECHTSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01665-JMS-TAB |
| | ) | |
| BRANDON LAUGHLIN, | ) | |
| CHRISTOPHER WALTER, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY

Mark Albrechtsen was driving in southwest Indianapolis when he encountered a motorcade returning from dropping off the Secretary of Veterans Affairs at the airport. Mr. Albrechtsen brought suit, alleging that two of the drivers in the motorcade, Defendants Brandon Laughlin and Christopher Walter,[1] unconstitutionally detained him when he was made to slow down on the side of the road. Even granting Mr. Albrechtsen the assumption that Defendants' actions could violate the Fourth Amendment, he has failed to establish that any such violation is well established. As a result, Defendants are entitled to qualified immunity, so the Court **GRANTS** their Motion for Summary Judgment. [Filing No. 64.]

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes

---

[1] While Mr. Albrechtsen names Christopher Walter as "Walters" in his complaint, Officer Walter avers that his name is in fact Christopher Walter. [*See* Filing No. 64-3.] The **Clerk is directed** to update the docket to reflect the corrected spelling shown in the above caption.

clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not suffice to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512

F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). "Existence in the record of a videotape capturing the events in question" does not change this well-established procedure, though it does yield "an added wrinkle." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not credit a party's story which is "blatantly contradicted by" the video evidence such that "no reasonable jury could believe it," but instead must "view[] the facts in the light depicted by the videotape." *Id.* at 380-81.

### A. Motorcade Incident

Mr. Albrechtsen's claims arise out of a driving incident on the morning of March 2, 2017, when he encountered a motorcade. At approximately 7:20 a.m. Mr. Albrechtsen was driving on Harding Street in Indianapolis. [*See* Filing No. 64-4 at 11.] Mr. Albrechtsen drove in the right

3

lane with a white Volkswagen ahead of him. [Filing No. 67, Video 1 at 7:20:31.][2] Mr. Albrechtsen saw the motorcade in the center lane, one lane to his left, also driving northbound. [*See* Filing No. 67, Video 1 at 7:20:38.] The lead vehicle was a silver SUV, followed by two black SUVs. [*See* Filing No. 67, Video 1 at 7:20:42.] Though Mr. Albrechtsen did not know at the time who the drivers were, the motorcade was returning from the Indianapolis International Airport where they had dropped of Veterans Affairs Secretary David Shulkin. [Filing No. 64-2 at 2.] The drivers were members of the Veterans Affairs police service. [Filing No. 64-1 at 3-4.]

Harding Street comes to a "T" intersection that only allows for a right or left turn. [Filing No. 64-4 at 9.] As the cars approached the turn, Sam Parsons, driving the lead vehicle in the motorcade, turned on his right turn signal and moved from the center lane to the right, placing himself directly in front of the Volkswagen which was in front of Mr. Albrechtsen. [Filing No. 64-2 at 2; Filing No. 67, Video 1 at 7:20:46.] Following Captain Parsons' lead, the second and third vehicles, driven by Christopher Laughlin and Christopher Walter, respectively, also changed into the right lane in front of the Volkswagen, causing it to brake. [Filing No. 64-2 at 2; Filing No. 67, Video 1 at 7:20:49.] Officer Walter activated his emergency lights as he changed lanes. [Filing No. 67, Video 1 at 7:20:49.] The lane change caused the cars to brake and the Volkswagen to pull off to the side of the road to avoid making contact with the third car in the motorcade. [Filing No. 67, Video 1 at 7:20:49.]

As the vehicles prepared to turn right at the intersection, Mr. Albrechtsen changed into the middle lane, passed the Volkswagon, and drove up alongside Officer Walter in the third motorcade

---

[2] Defendants' manually-filed DVD contains six separate video files. [Filing No. 67.] For ease of reference, the Court refers to IMG_2340.MOV as "Video 1" and to IMG_2342.MOV as "Video 2." The other videos are not necessary for resolving Defendants' Motion. All time citations refer to the time displayed on the bottom left of the video footage.

4

vehicle. [Filing No. 67, Video 1 at 7:20:52.] He stopped and yelled out his window, "Just because you have your lights on doesn't mean you can do f****** s***, d***." [Filing No. 64-4 at 33; Filing No. 67, Video 1 at 7:20:55-59.] Mr. Albrechtsen then accelerated past Officer Laughlin and Officer Walter, changed lanes behind the lead car in the motorcade, and turned right. [Filing No. 67, Video 1 at 7:20:55 – 7:21:10.]

Mr. Albrechtsen proceeded to drive in the left lane of a two-lane road between the lead and the second cars in the motorcade. [*See* Filing No. 67, Video 2.] He saw Officer Laughlin and Officer Walter turn on their emergency lights in the cars behind him. [Filing No. 64-4 at 12.] Believing he was being pulled over, Mr. Albrechtsen changed into the right lane and slowed down. [Filing No. 64-4 at 12-13; Filing No. 67, Video 2 at 7:21:18-24.] The lead car turned left, and Officer Laughlin in the second car likewise followed the lead car, pulling alongside Mr. Albrechtsen as he did so. [Filing No. 67, Video 2 at 7:21:25-26.] Mr. Albrechtsen yelled out of the driver's side window, "What, you got a problem? First Amendment right, d***. F*** you." [Filing No. 64-4 at 12.] Officer Laughlin responded saying either "move out of the way" or "get out of the way." [Filing No. 64-4 at 12.] Mr. Albrechtsen followed the first and second cars of the motorcade, making a left turn out of the right lane. [Filing No. 67, Video 2 at 7:21:26-30.] Officer Laughlin's presence on his left caused him to turn partially into the shoulder. [Filing No. 67, Video 2 at 7:21:29-31.] After Officer Laughlin passed, Mr. Albrechtsen merged between Officer Laughlin and Officer Walter and continued down the roadway. [Filing No. 67, Video 2 at 7:21:32-38.]

### B. Procedural History

Mr. Albrechtsen filed his operative Amended Complaint on September 27, 2017, alleging First Amendment and Fourth Amendment claims against the three drivers of the motorcade, Captain Parsons, Officer Laughlin, and Officer Walter. [Filing No. 15.] On May 7, 2018, the Court dismissed Mr. Albrechtsen's First Amendment claims against all defendants and dismissed his Fourth Amendment claim against Captain Parsons. [Filing No. 40.]

The only claims remaining are Mr. Albrechtsen's Fourth Amendment claims against Officers Laughlin and Walter. Specifically, Mr. Albrechtsen alleges that, by turning on their lights, Officers Laughlin and Walter compelled Mr. Albrechtsen to pull over to the side of the road, detaining him without reasonable suspicion. [Filing No. 15 at 6-8.] On April 19, 2019, Officers Laughlin and Walter filed their Motion for Summary Judgment, arguing that Mr. Albrechtsen's remaining Fourth Amendment claims fail as a matter of law. [Filing No. 64.] Their Motion is fully briefed and ripe for review.

### III.
### DISCUSSION

Defendants raise several arguments as to why they are entitled to judgment, though the Court need address just one—their entitlement to qualified immunity. Defendants argue that no case clearly establishes that their actions in turning on their emergency lights while in a motorcade violated the Fourth Amendment. [Filing No. 65 at 11-13.] In response, Mr. Albrechtsen does not address Defendants' argument, but instead states that "[i]t has been clearly established for over 50 years in light of the context of this case that, at a minimum, reasonable suspicion is required before law enforcement may detain an individual." [Filing No. 71 at 5.] In reply, Defendants reiterate that no case clearly establishes that their actions would violate the Fourth Amendment. [Filing No. 72 at 5.]

6

Where a defendant invokes the doctrine of qualified immunity, the plaintiff must establish (1) "that the actions of the defendant violated his constitutional rights" and (2) that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008). The Court, in its "sound discretion," may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As noted at the outset, in proceeding to the second phase of the qualified immunity analysis, the Court assumes that slowing to the side of the road for a passing motorcade with illuminated emergency lights could amount to a seizure for Fourth Amendment purposes. *But see, e.g.*, *California v. Hodari D.*, 499 U.S. 621, 627-28 (1991) (reiterating that whether a person is seized is an objective—not subjective—test, dependent on whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"). But the clearly established element "protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation omitted). The plaintiff bears the burden of overcoming a claim to qualified immunity by "demonstrat[ing] that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate'" or that the conduct was "'so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully.'" *Dockery v. Blackburn*, 911 F.3d 458, 466-67 (7th Cir. 2018) (first quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011), then quoting *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 723-24 (7th Cir. 2013)).

Mr. Albrechtsen's sole argument on qualified immunity is that the caselaw conclusively establishes that reasonable suspicion is required before an individual may be detained. Indeed, the Fourth Amendment protects "against unreasonable seizures," U.S. Const. amend. IV., and traffic stops are generally reasonable only where an officer has "reasonable suspicion that criminal activity is afoot," *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014). But a "clearly established right must be defined with specificity. [The Supreme Court] has repeatedly told courts not to define clearly established law at a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (internal quotations and alteration omitted). In this vein, the Seventh Circuit held that the general statement that a seizure occurs "when [an] officer[] by means of physical force or a show of authority in some way restrain[s] the liberty of a citizen" was "far too opaque to have established the unlawfulness of" the conduct of an officer who threatened tenants with arrest if they did not leave pursuant to an eviction order. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1181 (7th Cir. 1994)

Here, too, Mr. Albrechtsen attempts to define the right at issue at far too high a level of generality. The general Fourth Amendment standards would not put reasonable officers in Defendants' position on notice that their activities were unlawful. Specifically, the cases discussing the reasonable suspicion requirement do not remotely suggest that turning on emergency lights as part of a motorcade would be the type of "show of authority" that would restrain the liberty of other citizens on the road and constitute a seizure. *Id.* Given that this is an objective standard, Mr. Albrechtsen's subjective opinion that the officers were intending to stop him is irrelevant to the analysis. Mr. Albrechtsen fails to point to law clearly establishing the alleged constitutional violation and therefore fails to defeat Defendants' claim to qualified immunity.

## IV.
### CONCLUSION

For the foregoing reasons, the Court concludes that Brandon Laughlin and Christopher Walter are entitled to qualified immunity and **GRANTS** their Motion for Summary Judgment. [64] Judgment consistent with this Entry and with the Court's Entry dated May 7, 2018 shall now issue.

Date: 7/18/2019

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF to Registered Counsel**

**Distribution via U.S. Mail to:**

MARK A. ALBRECHTSEN
4752 Stardust Circle
Plainfield, IN 46168